August 10, 1979

## 79-59   MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Federal Advisory Committee Act (5 U.S.C. App. I)—United States-Japan Consultative Group on Economic Relations

This responds to your request that we summarize the advice we have provided you by telephone concerning two questions that involve the U.S.-Japan Consultative Group on Economic Relations (the Group). The questions are the following: (1) is the Group covered by the Federal Advisory Committee Act; and (2) would an individual appointed to serve as the chief of staff for the American members of the Group be subject to the Federal conflict of interest statutes? Given the facts as we understand them, the answer to the first question is no, and the answer to the second question is yes.

The United States-Japan Consultative Group on Economic Relations has been established by agreement between the President and the Prime Minister of Japan. It is to be composed of eight members, with four serving from each country; to date, only the lead representatives of each nation have been appointed. The Group is to meet at regular intervals for a total of a few days per year. Its mission, in the broadest terms, is to provide a forum for discussion of major economic issues—involving trade, finance, commerce, and related matters—of significance to both nations and, ultimately, to bilateral relations between them.

There are to be two chiefs of staff, one for the Group's Japanese members and one for the American members. The American chief of staff is to be formally appointed either by the President or by the Secretary of State. The actual work of the staff director would include the identification, analysis, and monitoring of economic issues crucial to the Government's economic policy vis-a-vis Japan.

## The Federal Advisory Committee Act

It is our opinion that as a matter of statutory construction Congress did not intend the Federal Advisory Committee Act (FACA), 5 U.S.C. App. (Supp. III, 1979), to apply to such a body created jointly by the United States and another nation. The FACA's definition of an advisory committee, in § 3(2), does not specifically mention international bodies. A broad and literal reading of the definition might encompass an international commission, assuming that it has the function of advising the President or a Federal agency. But, as we concluded in 1976 in the context of international joint commissions in which the United States participates, such a reading would be inappropriate.

First, it should not be assumed, absent clear evidence to the contrary, that Congress intended the FACA to apply, in this country or abroad, to groups created jointly by, and serving jointly, the United States and another sovereign state. For to conclude otherwise would in effect impose certain duties on the members of the group who are citizens of a foreign nation, and would empower U.S. officials to take control of aspects of the group's operation as required by the FACA. *See, e.g.,* FACA, § 10(d)-(f). Such a consequence might prove offensive to the foreign nation and its members, and would violate the accepted principle of statutory construction that, absent contrary indication, Federal legislation will not extend beyond the boundaries of the United States in order to avoid offending the "dignity or right of sovereignty" of other nations. *Vermilya-Brown Co.* v. *Connell,* 335 U.S. 377, 381 (1948); *Steele* v. *Bulova Watch Co.,* 344 U.S. 280, 285 (1952). In addition, substantial issues of constitutionality concerning the extent of the President's power to conduct foreign relations should be avoided in the construction of statutes. *See, e.g., United States* v. *Vuitch,* 402 U.S. 62, 70 (1971). For these reasons, we conclude that the FACA should not be viewed as applying to the U.S.-Japan Consultative Group.[1]

## Conflict of Interest Statutes

The second question you have raised is whether the staff director for the American members of the Group should be considered an "officer" or "employee" of the United States, and thereby subject to the conflict of interest restrictions imposed on such persons. As you know, there are basically two types of Government employees for purposes of the conflict of interest statutes: regular employees, and "special Government employees." If one fits within either category, he or she must meet certain standards set down by the conflict of interest statutes; however, the standards applicable

---

[1]It should be noted that there is a second ground upon which it might be concluded that the FACA is inapplicable. The Act applies only to groups whose functions are "advisory" in nature, and this group—serving as an instrument of U.S. foreign policy—might be regarded as "operational" rather than advisory. Because we think the result clear for the alternative reason stated above, we have not studied in detail this second ground.

to special Government employees, who are appointed to perform services (with or without compensation) for not more than 130 of the succeeding 365 days, are somewhat less stringent. For both categories, the threshold test is whether a person is an "officer" or "employee" of the United States.

In light of the facts as explained to us, there seems to be little doubt that the staff director would be an officer or employee of the Government for present purposes. First, such an individual would be appointed to his position. Thus, there will be a clear formal relationship between the individual and the Government. In addition, the staff director is to perform functions that would appear plainly to be governmental in character. He will, for instance, assist in identifying issues of sensitivity to the U.S. Government in its economic relations with Japan. He will call upon officials in the Government with expertise in this area—such as in the Department of State and Commerce—and may ask them for background papers on matters of importance to the Nation. He will help assemble information needed in formulating advice to the President. He will also monitor Japanese responses to the Group's activities. Furthermore, he is to be directly supervised by the lead American representative among the Group's members, who is himself a full-time, regular Government employee. These facts, in their totality, lead us to conclude, on the basis of the tests we have applied in other circumstances, that the staff director would be at least a special Government employee, if not a regular Government employee.[2]

The designation of an officer or employee of the United States as a special Government employee, as that term is defined in 18 U.S.C. § 202, depends on a good faith estimate by the employing agency, made at the time of appointment, that the individual concerned will not actually perform services on all or part of more than 130 of the succeeding 365 days. The designation of a special Government employee remains in effect for the entire 365 days, even if it should turn out that the individual in fact serves for more than 130 days. *See, Federal Personnel Manual,* Chapter 735, Appendix C, at 2.

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[2]*See also* B. Manning, *Federal Conflict of Interest Law* 27, 34 (1964).