

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2002

# Club Camanche Inc. v. Govt. of Virgin Islands

Precedential or Non-Precedential:

Docket 01-1717

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Club Camanche Inc. v. Govt. of Virgin Islands" (2002). *2002 Decisions.* Paper 15.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 14, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1717

CLUB COMANCHE, INC.

v.

GOVERNMENT OF THE VIRGIN ISLANDS,
and any other person or party
claiming an interest in Plot 40
or 40A Strand Street, Christiansted,
St. Croix, Appellant

On Appeal From the District Court
of the Virgin Islands
(D.C. Civ. No. 98-cv-00213)
District Judge: Honorable Raymond L. Finch, Chief Judge

Argued: December 3, 2001

Before: BECKER, Chief Judge, NYGAARD and
COWEN, Circuit Judges.

(Filed January 14, 2002)

IVER A. STRIDIRON, ESQUIRE
Attorney General
FREDERICK HANDLEMAN,
 ESQUIRE
Solicitor General
RICHARD M. PRENDERGAST,
 ESQUIRE (ARGUED)
Assistant Attorney General
Virgin Islands Department of Justice
6040 Castle Coakley
Christiansted, St. Croix, V.I. 00820

Counsel for Appellant

BETHANEY J. PICHIERRI, ESQUIRE
 (ARGUED)
Tom Bolt & Associates
Corporate Place
Royal Dane Mall
Charlotte Amalie, St. Thomas,
 U.S. Virgin Islands 00802

BRIAN P. KENNEY, ESQUIRE
Kenney & O'Shea
1818 Market Street – Suite 3520
Philadelphia, PA 19103

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

A dispute between the Government of the Virgin Islands ("GVI") and a littoral landowner[1] over the boundaries of a piece of property in downtown Christiansted, St. Croix, led to this quiet title action in the District Court of the Virgin Islands, which the District Court resolved by granting summary judgment to the plaintiff, Club Comanche, Inc.

_____

[1]. "A littoral landowner is one whose land borders an ocean, sea, or lake." Alexander Hamilton Life Ins. v. Gov't of the Virgin Islands, 757 F.2d 534, 538 (3d Cir. 1985).

2

The threshold question in this appeal is whether the District Court had (or lacked) subject matter jurisdiction. Applying the "well-pleaded complaint rule," we conclude that none of the asserted bases for jurisdiction in the District Court rather than the Territorial Court of the Virgin Islands -- i.e., the 1916 treaty by which Denmark transferred the Virgin Islands to the United States and the federal statutes by which the United States transferred public lands and submerged and reclaimed lands to the GVI in 1974 -- is sufficient to support federal question jurisdiction in a quiet title action brought pursuant to the Virgin Islands quiet title statute, 28 V.I.C. S 372. We will therefore vacate the District Court's order and remand with instructions to dismiss the suit without prejudice.

I. Facts & Procedural History

The case involves the disputed boundaries of the property at 40 Strand Street, which is located in the town of Christiansted. Club Comanche, Inc., the current owner of 40 Strand Street, operates a hotel and restaurant on the property. The case arises from the GVI's attempt to build a pedestrian boardwalk along Christiansted Harbor. According to Club Comanche, the GVI told the littoral landowners in Christiansted that it could not afford to exercise eminent domain and pay for the land necessary to build the boardwalk. Believing that the boardwalk would be beneficial to their businesses, the littoral landowners, including Club Comanche, agreed to grant a "perpetual easement" to the government for the boardwalk. The GVI originally agreed to this arrangement but, in Club Comanche's submission, subsequently claimed that the coastline of lot 40 actually does not belong to Club Comanche but rather to the GVI in trust for the people of the Virgin Islands. The GVI drew a new map of the area around lot 40 Strand Street, designating the northern coastal portion of the lot as "lot 40A Strand Street," and claimed ownership of the renamed parcel. In response, Club Comanche filed this quiet title action in the District Court.

Lot 40 Strand Street is a roughly rectangular piece of property that fronts Strand Street on its southern edge. The

3

lot is bordered on its western edge by lot 39 Strand Street. The northern and eastern borders of the property are in dispute. Club Comanche contends that its property extends northward all the way to Christiansted Harbor. The GVI submits that Club Comanche's lot does not extend all the way to the water, and that the coastal area north of lot 40, which it has designated lot 40A, belongs to the GVI. [2] This dispute turns largely on the proper translation of the first document recording the dimensions of lot 40 Strand Street, the so-called Danish Measure Brief. The dimensions from the original Danish Measure Brief have appeared on the deeds to that property since 1803 (first in Danish, and later in English).

The deed by which the previous owner of 40 Strand Street conveyed the property to Club Comanche recites the following interpretation of the language from the original Danish Measure Brief:

> MEASURE BRIEF
>
> FOR THE PROPERTY NO. 40 Strand Street, in the Town of Christiansted, on the Island of St. Croix, V.I.[,] U.S.A.
>
> THIS IS TO CERTIFY that the above mentioned lot according to the Surveyor's Records has the following boundaries:
>
> to the north 63 feet towards the sea
> to the south 61 feet towards Strand Street
> to the East 215 feet towards 55 King Street
> to the West 215 feet towards 39 Strand Street

This area is about DANISH MEASURE square feet.[3]
_____

2. On the eastern edge of the property, Club Comanche maintains that its lot is bordered by the lot at 55 King Street, while the GVI contends that it has always owned a corridor of land along the eastern edge of the property that could accommodate the extension of Strand Lane (which is perpendicular to Strand Street) northward to the harbor.

3. Danish feet are slightly longer than English feet. A length of 215 Danish feet is roughly equal to 221.5 English feet. The dimensions that we cite in this opinion are in Danish feet.

4

Club Comanche offered testimony from its surveyor, who contacted the main Cadastral (property records) Office in Denmark, which keeps historical property records from St. Croix, stating that the Danish word "til," which the above passage translates as "towards," should actually be translated as "along" or "against." This would make the proper translation of the Measure Brief, "63 feet along the sea," "61 feet along Strand Street," and so on.4 Under this translation, Club Comanche would be a littoral landowner.

The GVI presented an affidavit from a translator that stated that the proper translation of the dimensions recited in the Danish Measure Brief is as follows:

> Facing North 63' toward the Sea
> [Facing] South 61' toward Strand Street
> [Facing] East 215' toward 55 King's Street
> [Facing] West 215' toward 39 Strand Street

The translator translated the word "facing" from the Danish word "mod," which begins the first line of the original Danish Measure Brief. According to the translator's affidavit, "[t]he word `mod' is a shortened form of the Danish expression `med front mod,' meaning `facing' in English." The word "mod" does not precede the next three lines, but the translator inferred from its placement that it applied to all four. The translator also offered a longer interpretation of the meaning of the abbreviated phrases used on the Measure Brief, opining that:

> [T]he intention of the description is to explain the size of the piece of land and where it is located. Thus, in reality what is being stated is:
>
> The property line facing the north side toward the sea is 63 feet long.
>
> The property line facing the south side toward Strand Street is 61 feet long.
>
> The property line facing the east side toward 55 King's Street is 215 feet long.

_____

4. Club Comanche also submitted an affidavit from a Danish translator that interpreted the word "til" in the Measure Brief to mean "to."

The property line facing the west side toward 39 Strand Street is 215 feet long.

Thus, in order to understand how far 40 Strand Street extends towards the sea, it is necessary to look at the east and west property lines. According to the surveyor's description, the property extends 215' (Danish measure) from Strand Street in the direction of the sea, that is, northward.

Under this interpretation, given the dimensions of the disputed lot, Club Comanche would not be a littoral landowner with any claim to the area traversed by the boardwalk.

Basing its argument on the contention that the original Danish Measure Brief defined the property as running "along the sea," or northward "to the sea," Club Comanche reasoned that the rule of construction stated in 28 V.I.C. S 47(2) should apply. That section states:

When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement either of lines, angles, or surfaces, the boundaries or monuments are paramount.

28 V.I.C. S 47(2) (1996). Club Comanche argued that because the boundary defined by reference to the sea was inconsistent with the actual distance between Strand Street and the sea, the court should, pursuant to 28 V.I.C. S 47(2), declare that the sea is the actual northern boundary of lot 40. The GVI, in contrast, contended that the translation that it offered means that lot 40 Strand Street extends northward only 215 feet from Strand Street, leaving a strip of coastline between the northern boundary of the lot and Christiansted Harbor, which it asserts belongs to the GVI.

Following discovery, Club Comanche moved for summary judgment. The GVI filed a brief in opposition to the motion and a cross-motion for summary judgment. Club Comanche then moved for a temporary restraining order (TRO) and preliminary injunction against the construction of the boardwalk. Following a hearing, the District Court granted the TRO, ordering the GVI to cease exercising

6

dominion over lot 40A, with the proviso that the GVI could continue to build the boardwalk subject to the understanding that it would be required to remove any of the boardwalk it constructed on lot 40A if that portion of the lot was later determined to belong to Club Comanche.

The parties filed a stipulation waiving a hearing on the request for a preliminary injunction and the summary judgment motions. Thereafter, Club Comanche moved to amend its complaint to request a declaration clarifying title to the disputed area on the eastern side of the property (the Strand Lane extension), see supra note 2, which the District Court granted. Club Comanche then filed an amended complaint that included a prayer for declaratory judgment on the disputed eastern edge of the property, which the GVI answered.

On February 22, 2001, the District Court entered an order granting Club Comanche's motion for summary judgment, and denying the GVI's cross-motion without an accompanying opinion. Judging from the language in the order, it appears that the District Court accepted Club Comanche's translation of the Danish Measure Brief and applied the presumption from 28 V.I.C. S 47(2), concluding that "[u]pon consideration of the evidence presented to the Court, the Court now finds [that][a]s proven by the testimony of Marshall Walker, surveyor, . . . Plot 40 . . . was originally intended to `run to the sea' and include Plot 40A." (emphasis added). Although it did not discuss the legal issues involved in the dispute regarding the eastern edge of the property, the District Court's grant of summary judgment also disposed of that issue. The GVI now appeals the District Court's order granting summary judgment to Club Comanche.

II. Subject Matter Jurisdiction

A. Background -- Contentions of the Parties

Although neither party challenges the District Court's subject matter jurisdiction (or raised the issue in the District Court), we are obligated to address questions of

jurisdiction sua sponte. See Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999).

We have detailed the jurisdictional history of the District Court of the Virgin Islands in Callwood v. Enos , 230 F.3d 627 (3d Cir. 2000), and Brow v. Farrelly, 994 F.2d 1027 (3d Cir. 1993), so we will provide only a summary version here. The Revised Organic Act, 48 U.S.C. SS 1541–1645 (West 1987 & Supp. 2001), which Congress enacted pursuant to its power under Article IV, S 3 of the U.S. Constitution, establishes the jurisdiction of the District Court of the Virgin Islands.5 Before 1984, the Revised Organic Act vested broad jurisdiction in the District Court of the Virgin Islands, including jurisdiction over "all causes arising under the Constitution, treaties and laws of the United States," Act of July 22, 1954, ch. 558 S 22, 68 Stat. 497, as well as "general original jurisdiction over all other matters in the Virgin Islands, subject to the exclusive jurisdiction of the local courts over civil actions in which the amount in controversy was less than $500 and over criminal actions for local offenses in which the maximum punishment did not exceed six months in prison or a $100 fine." Callwood, 230 F.3d at 630. The result of this broad grant of jurisdiction was that the District Court of the Virgin Islands was "more like a state court of general jurisdiction than a United States district court." Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1057 (3d Cir. 1982).

In 1984, Congress rewrote the section of the Revised Organic Act that defines the jurisdiction of the District Court of the Virgin Islands. The new jurisdictional provision effected two changes. First, the Act provided that,"[t]he District Court of the Virgin Islands shall have the jurisdiction of a District Court of the United States, including, but not limited to, the diversity jurisdiction provided for in section 1332 of Title 28, and that of a

_____

5. Article IV, S 3 of the U.S. Constitution authorizes Congress to make "all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, S 3, cl. 2. Pursuant to this power, Congress enacted the Revised Organic Act, which serves as the Virgin Islands constitution. See Parrott v. Gov't of the
Virgin Islands, 230 F.3d 615, 623 (3d Cir. 2000).

8

bankruptcy court of the United States." 48 U.S.C.S 1612(a). As we noted in Walker v. Government of the Virgin Islands, 230 F.3d 82 (3d Cir. 2000), this provision "affirmatively bestows on the District Court of the Virgin Islands the entire jurisdiction of a District Court of the United States . . . ." Id. at 86. Second, the Act provided that "the District Court of the Virgin Islands shall have general original jurisdiction in all causes in the Virgin Islands the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands . . . ." 48 U.S.C. S 1612(b). Most importantly, however, in this section, "Congress gave the Virgin Islands legislature the power to vest jurisdiction over local actions exclusively in the local courts." Callwood, 230 F.3d at 631; see also Estate Thomas Mall, Inc. v. Territorial Court of the Virgin Islands, 923 F.2d 258, 261 (3d Cir. 1991).

The Virgin Islands legislature exercised this power in 1990, by enacting the following statutory section, which provides in relevant part:

> Subject to the original jurisdiction conferred on the District Court by section 22 of the Revised Organic Act of 1954, as amended, effective October 1, 1991, the Territorial Court shall have original jurisdiction in all civil actions regardless of the amount in controversy . . . .

4 V.I.C. S 76(a) (1997). In Brow we explained that "this section divests the District Court of the Virgin Islands of jurisdiction of all local civil actions, but does not divest the District Court of its federal question and diversity jurisdiction in civil actions, as evidenced by the provisional language at the beginning of the statute." 994 F.2d at 1034; see also 4 V.I.C. S 76(b) (1997) (vesting original jurisdiction over all local criminal actions in the Territorial Court).

Therefore, the question in this case is whether the District Court had jurisdiction to hear this dispute under 48 U.S.C. S 1612(a), which gives the District of the Virgin Islands jurisdiction that is equivalent, at least in the civil context, to that of a United States District Court. 6 Because

_____

6. Cf. Callwood, 230 F.3d at 631 (noting that "under S 22 of the Revised Organic Act, [48 U.S.C. S 1612(c),] the District Court of the Virgin Islands retains concurrent jurisdiction with the Territorial Court over criminal actions in which the local crimes charged are related to federal crimes").

9

the parties are not diverse, the only possible source of jurisdiction is federal question jurisdiction, which the District Court of the Virgin Islands has pursuant to 28 U.S.C. S 1331 and 48 U.S.C. S 1612(a). We asked for supplemental briefs on the source of federal question jurisdiction in this case. Both parties agreed that this case is an action to quiet title. Club Comanche concedes that normally, such quiet title actions belong in the Territorial Court, and not the District Court. However, both parties contend that there are federal elements to the claim that are sufficient to support federal question jurisdiction.

They point primarily to the Convention Between the United States and Denmark, 39 Stat. 1706 (signed Aug. 4, 1916; ratified Jan. 16, 1917) (reprinted in Title 1 V.I. Code Ann. at 27), by which the United States purchased from Denmark all of the state-owned lands in the islands of St. Croix, St. Thomas, and St. John. They argue that the resolution of this quiet title action requires the court to interpret this treaty, thus providing the basis for federal question jurisdiction.

The GVI also points to three other purported sources of federal question jurisdiction. First, the GVI cites the two federal statutes by which the United States turned over submerged and public lands to the GVI: 48 U.S.C.SS 1705-08 (conveying to the GVI all submerged and formerly submerged lands), and 48 U.S.C. SS 1545(b)(1) and (2) (turning over to the GVI all public lands held by the United States except those expressly reserved by the U.S. Department of the Interior). The GVI also cites the federal common law as a source of federal jurisdiction, which it correctly contends is the law that governs questions of shoreline filling and accretion that occurred prior to 1974, when the United States conveyed submerged lands in the U.S. Virgin Islands to the GVI. See Alexander Hamilton Life Ins., 757 F.2d at 538 n.6.7

_____

7. The federal common law of submerged lands is arguably relevant to this case because one of the alternative arguments that the GVI presents is that the coastal lot that it now designates lot 40A was originally submerged land that the owners of lot 40 have reclaimed from the sea through a process of artificial filling, primarily during the eighteenth and

10

B. Significance of the Virgin Islands Quiet Title
Statute

Preliminarily we must dispose of the question whether
the fact that the Virgin Islands quiet title statute, 28 V.I.C.
S 372, which, when it was enacted in 1921, specifically
vested jurisdiction in the "district court," exempts quiet title
actions from 4 V.I.C. S 76(a)'s vesting of "original
jurisdiction in all civil actions" in the Territorial Courts. If
so, the District Court of the Virgin Islands would still have
jurisdiction over quiet title actions brought under 28 V.I.C.
S 372 pursuant to 48 U.S.C. S 1612(b). While Club
Comanche did not specifically cite S 372 as the basis for its
quiet title claim in this case, it acknowledges that its claim
is a quiet title claim. The parties do not cite and we cannot
find any statute other than 28 V.I.C. S 372 that could
support Comanche's quiet title action. Therefore, we
assume that Comanche has brought its claim pursuant to
that statute.

The Virgin Islands Code section governing quiet title
actions, titled "Action to determine boundaries," provides as
follows:

_____

nineteenth centuries. We held in Alexander Hamilton Life Insurance that
the federal common law applied to a dispute over littoral property in the
Virgin Islands where the purported filling and/or extension of the
property into the sea through natural accretion took place prior to 1974,
when the GVI obtained title over submerged lands, (although we did not
decide whether the federal common law applies to filling or accretion
that took place prior to 1917, when the United States obtained from
Denmark title to the submerged lands surrounding St. Croix, St.
Thomas, and St. John). 757 F.2d at 538 n.6. Under federal common law,
if a littoral landowner's property is extended through the natural process
of accretion, then the reclaimed coastal land (also known as "fastlands")
"accrue to the owner of the adjoining uplands, because this owner
should not be deprived of his access to the sea, which is a major factor
in the value of his property, by slow and imperceptible acts of nature."
Id. at 538. However, "[t]itle to fastlands . . . resulting from
unauthorized
artificial fill remains with the owner of the submerged lands." Id. at
539.

We do not reach the question whether the federal common law of
submerged lands governs this dispute because even assuming that it
does, the plaintiff did not need to reference the federal common law in
its quiet title complaint, and thus it cannot be the basis for federal
question jurisdiction in this case. See infra  Section II.C.

11

In any case where any dispute or controversy exists, or may hereafter arise, between two or more owners of adjacent or contiguous lands in the Virgin Islands, concerning the boundary lines thereof, or the location of the lines dividing such lands, either party or any party to such dispute or controversy may bring and maintain an action of an equitable nature in the district court for the purpose of having such controversy or dispute determined . . . .

28 V.I.C. S 372 (1997) (emphasis added). Thus, the question arises whether S 76(a)'s general grant of original jurisdiction to the Territorial Courts in all civil actions has impliedly repealed the part of 28 V.I.C. S 372 that earlier expressly stated that quiet title actions should be brought"in the district court." On one hand, the language ofS 76(a) is broad and does not specify any exceptions. It unambiguously states that "the Territorial Court shall have original jurisdiction in all civil actions regardless of the amount in controversy." S 76(a). And we have held that S 76(a) has divested the District Court of the Virgin Islands of jurisdiction over "all local civil actions." Brow, 994 F.2d at 1034. On the other hand, to interpret S 76(a) to cover the quiet title action established in S 372 would go against the canon of statutory construction that "[i]mplied repeals are not favored, and if effect can reasonably be given to both statutes the presumption is that the earlier is intended to remain in force." United States v. Vuitch, 402 U.S. 62, 88 (1971) (quoting United States v. Burroughs, 289 U.S. 159, 164 (1933)) (internal quotation marks omitted).

While we recognize that these two statutes are in some tension, we are satisfied that S 76(a)'s language vesting original jurisdiction in the Territorial Courts in"all civil actions" includes quiet title actions, notwithstanding the language from S 372 about bringing a quiet title action "in the district court."8 ReadingS 76(a) to divest the District

_____

8. In Newfound Mgmt. Corp. v. Lewis, 131 F.3d 108 (3d Cir. 1997), we noted that jurisdiction over quiet title cases "resides in the territorial court" for cases filed after the effective date of S 76(a). We did not discuss
the issue, however, because the case before us had been filed before the effective date of S 76(a) and thus the District Court of the Virgin Islands
had jurisdiction notwithstanding the later vesting of such actions in the Territorial Courts. Id. at 119 n.9. We take this opportunity to address more fully why S 76(a) vests original jurisdiction over quiet title actions
brought pursuant to 28 V.I.C. S 372 in the Territorial Courts.

Court of the Virgin Islands of jurisdiction overS 372 quiet title actions does not actually impliedly repeal any operative part of S 372. The only part that it arguably repeals is S 372's statement that "either party or any party to such dispute or controversy may bring and maintain an action of an equitable nature in the district court . . . ." 28 V.I.C. S 372 (emphasis added). The rest of the statute -- the part that creates the cause of action -- remains. The part that purports to vest jurisdiction in the district court, however, was both inoperative (because only Congress may vest jurisdiction in the District Court of the Virgin Islands) and unnecessary (because Congress had already vested broad jurisdiction in the District Court of the Virgin Islands) in the first place. See Estate Thomas Mall, Inc. , 923 F.2d at 261.9

C. Reasons for the Absence of Federal Question Jurisdiction

The most straightforward test of whether an action presents a federal question is to determine the law from which the cause of action arises, federal or otherwise. Justice Holmes's formulation of this test was that"[a] suit arises under the law that creates the cause of action." Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). The parties in this case both concede that it is a quiet title action. The only potential source of law for such an action is 28 V.I.C. S 372, the Virgin Islands statute

_____

9. We also note that the Territorial Court has interpreted S 76(a) as "rendering null and void" a provision of the Virgin Islands Code that contains language similar to S 372's language that purports to vest jurisdiction "in the district court." In In re Application of Moorhead, 27 V.I. 74 (Terr. Ct. 1992), the Territorial Court considered the effect of S 76(a) on 4 V.I.C. S 441. Section 441 provides that "[t]he district court has jurisdiction over the admission of attorneys at law to practice in the courts of the Territory and over the discipline of persons so admitted and may make rules and regulations governing the practice of law in the Territory." S 441(a). Finding the language of S 76(a) to be "clear and unequivocal" in its intent to "include[ ] all civil actions cognizable in local courts," the Territorial Court found that when the Virgin Islands legislature enacted S 76(a), "the District Court was then divested of such jurisdiction, and the prior local law, 4 V.I.C. Sec. 441, being inconsistent with [S 76(a)], was rendered null and void." Moorhead, 27 V.I. at 82, 84.

13

titled, "Action to determine boundaries." See supra at 11-12.

If, as here, the cause of action is created by state or territorial law rather than federal law, the claim may still present a federal question. In these circumstances,"[t]he presence or absence of federal-question jurisdiction is governed by the `well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff 's properly pleaded complaint." Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (internal quotation marks omitted)). A plaintiff 's lack of reference, or erroneous reference to federal law is not controlling. See N. Am. Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233 (2d Cir. 1978). Common-law pleading requirements originally provided the benchmark for determining whether a federal element must be raised to support a "well-pleaded" complaint. See Wright et al., Federal Practice and Procedure,S 3566 at 83 (1984) (noting that in early cases, the Supreme Court "cit[ed] Chitty [on Pleadings] to determine what allegations are proper").

Modern cases, however, look to the pleading requirements established in the statutes from which the causes of action arise, or in courts' interpretations of the pleading requirements of those statutes. See, e.g., Yokeno v. Mafnas, 973 F.2d 803, 808 (9th Cir. 1992) (citing Hodges Transp., Inc. v. Nevada, 562 F. Supp. 521, 522 (D. Nev. 1983), which in turn relied on the Nevada Supreme Court's interpretation of the pleading requirements in quiet title actions for the purpose of the well-pleaded complaint rule). The Virgin Islands legislature has helpfully specified what is necessary for a properly pleaded complaint brought under 28 V.I.C. S 372:

> The complaint in an action to determine boundaries shall be sufficient if it appears therefrom that the plaintiff and defendant or defendants are owners of adjacent lands and that there is a controversy or dispute between the parties concerning their boundary or dividing line or lines. It shall not be necessary to set forth the nature of such dispute or controversy further

14

than that the plaintiff shall describe the boundary or dividing line as he claims it to be. The defendant, in his answer, shall set forth the nature of his claim with reference to the location of the lines in the controversy.

28 V.I.C. S 373 (1997) (emphasis added).

Club Comanche could have filed a well-pleaded S 372 complaint in this action simply by stating the boundaries of the property that it claimed. Thus, in this case, the federal issues of interpreting the Convention Between the United States and Denmark, interpreting the federal statutes that transferred submerged and public lands from the United States to the GVI, and applying the federal common law of submerged lands, did not need to be raised in Club Comanche's well-pleaded quiet title complaint. Therefore, applying the well-pleaded complaint rule, Club Comanche's quiet title action does not contain a federal question sufficient to support jurisdiction under 28 U.S.C.S 1331 and 48 U.S.C. S 1612(a).

Other federal courts that have considered the question whether quiet title actions in which the defendant's claim to the land was based on federal law have also concluded that they do not qualify for federal question jurisdiction under the well-pleaded complaint rule. See American Invs-Co Countryside, Inc. v. Riverdale Bank, 596 F.2d 211, 217 n.10 (7th Cir. 1979) ("If title to land is in doubt because of some matter of federal law, there is federal jurisdiction to entertain a bill to remove a cloud on title but not a suit to quiet title, since allegations as to the nature of the cloud are proper in the first kind of action but improper in the second."); see also Friend v. Kreger, 1998 U.S. Dist. LEXIS 6764, at *2 (N.D. Cal. May 7, 1998) (finding that the state law quiet title action before the court did not present a federal question under the well-pleaded complaint rule); accord 14 ALR.2d 992, 1125 (1950) ("[I]t is difficult, at least in the ordinary type of case, to plead a Federal question substantial in nature which is an essential element of plaintiff 's quiet title action . . . ."). This analysis accords with common jurisprudential notions of the incidents of "arising under" jurisdiction. The mere fact that a source of law, such as the treaty involved here, is consulted in deciding an issue, does not create jurisdiction.

15

For the foregoing reasons, we hold that Club Comanche's quiet title claim does not "arise under" the laws or treaties of the United States within the meaning of section 1331, and therefore that the District Court did not have jurisdiction over this dispute under 48 U.S.C. S 1612(a).10 We will therefore vacate the District Court's summary judgment order and remand the case with instructions for the District Court to dismiss it without prejudice so that it may be refiled in the Territorial Court.11 Dismissal without prejudice should not present a problem for Club Comanche because there appears to be a twenty-year statute of limitations on quiet title actions. See 5 V.I.C. S 32(b) (1997) ("An action for the determination of any right or claim to or interest in real property shall be deemed within the limitations provided for actions for the recovery of the possession of real property."); S 31(1)(A) (actions for the recovery of the possession of real property are subject to a twenty-year statute of limitations). We note in this regard that the District Court does not have the authority to transfer the case to the Territorial Court. See Moravian Sch. Advisory Bd. v. Rawlins, 70 F.3d 270, 274 (3d Cir. 1995).

10. Although Club Comanche cited in its complaint the "takings" clause of the Fifth Amendment to the U.S. Constitution (which applies to the U.S. Virgin Islands pursuant to the Revised Organic Act, 48 U.S.C. S 1561), it never requested relief in the form of "just compensation," never argued the "takings" issue before the District Court, and has not argued before this court that the "takings" clause serves as the basis for federal question jurisdiction. Moreover, Club Comanche suffered neither a permanent physical occupation of its property nor a destruction of the value of its property through regulation, the actions that we generally recognize as bases of a claim for just compensation under the Fifth Amendment.

11. We assume that the matter may be resolved expeditiously by the Territorial Court because the District Court has already developed a record. We trust, however, that the Territorial Court will consider the need to make findings of fact at the appropriate stage in the case. While the District Court disposed of the case on summary judgment, it appears to have made findings of fact on the issue of the proper translation of the Danish Measure Brief which, of course, is not permitted at the summary judgment stage.

16

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

17