# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

ZACARIAS MOUSSAOUI, a/k/a Shaqil,
a/k/a Abu Khalid al Sahrawi,
          *Defendant,*

          and

ALL PLAINTIFFS NAMED IN 21 MC 97,
21 MC 101, AND 03 CV 9849,
          *Intervenors-Appellees.*

No. 06-4611

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:01-cr-00455-LMB)

Argued: November 30, 2006

Decided: March 14, 2007

Before WILKINS, Chief Judge, and WILLIAMS and
GREGORY, Circuit Judges.

---

Reversed and vacated by published opinion. Judge Williams wrote the
opinion, in which Chief Judge Wilkins and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Steven L. Lane, UNITED STATES DEPARTMENT OF
JUSTICE, Criminal Division, Washington, D.C., for Appellant.

Nathan Lewin, LEWIN & LEWIN, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Chuck Rosenberg, United States Attorney, David J. Novak, Assistant United States Attorney, R. Joseph Sher, Assistant United States Attorney, Douglas N. Letter, Terrorism Litigation Counsel, UNITED STATES DEPARTMENT OF JUSTICE, Criminal Division, Washington, D.C., for Appellant. Ronald L. Motley, Jodi Westbrook Flowers, Donald A. Migliori, Michael E. Elsner, Robert T. Haefele, Justin B. Kaplan, John M. Eubanks, MOTLEY RICE, L.L.C., Mount Pleasant, South Carolina; Alyza D. Lewin, LEWIN & LEWIN, L.L.P., Washington, D.C.; Marc S. Moller, Brian J. Alexander, KREINDLER AND KREINDLER, L.L.P., New York, New York; Gregory P. Joseph, Douglas J. Pepe, GREGORY P. JOSEPH LAW OFFICES, L.L.C., New York, New York; Robert A. Clifford, Chicago, Illinois; Richard A. Williamson, FLEMMING, ZULACK, WILLIAMSON, ZAUDERER, L.L.P., New York, New York, for Appellees.

---

## OPINION

WILLIAMS, Circuit Judge:

This appeal, although arising in the context of Zacarias Moussaoui's criminal prosecution,[1] is unrelated to the merits of the Govern-

---

[1]In December 2001, the Government arrested Moussaoui under a belief that he had conspired with other members of the terrorist organization al Qaeda to plan and carry out the September 11 attacks against the United States. He was charged with conspiracy to commit acts of terrorism transcending national boundaries, *see* 18 U.S.C.A. § 2332b(a)(2), (c) (West 2000); conspiracy to commit aircraft piracy, *see* 49 U.S.C.A. § 46502(a)(1)(A), (a)(2)(B) (West 1997); conspiracy to destroy aircraft, *see* 18 U.S.C.A. §§ 32(a)(7), 34 (West 2000); conspiracy to use weapons of mass destruction, *see* 18 U.S.C.A. § 2332a(a) (West 2000 & Supp. 2006); conspiracy to murder United States employees, *see* 18 U.S.C.A. §§ 1114, 1117 (West 2000 & Supp. 2006); and conspiracy to destroy property, *see* 18 U.S.C.A. § 844(f), (i), (n) (West 2000 & Supp. 2006). He ultimately pleaded guilty to all charges. The Government sought the death penalty, but a jury declined to sentence Moussaoui to death. His appeal in this court is currently pending. *See United States v. Moussaoui*, No. 06-4494 (notice of appeal filed May 12, 2006).

ment's case against Moussaoui. Rather, it concerns only the district court's decision to order the Government to provide to certain victims of the September 11 attacks (the Civil Plaintiffs) non-public discovery materials that the Government had provided to Moussaoui in the course of its criminal case against him. Moussaoui, therefore, is not an actual party to this appeal. Because we determine that the district court lacked the power to institute the orders, we reverse and vacate the district court's orders.

I.

As part of the Government's criminal case against Moussaoui, it provided Moussaoui with millions of pages of documents, including more than 166,000 FBI interview reports and over 1.7 million pages of documents from the FBI's ongoing criminal investigation of the September 11 attacks (the PENTTBOM investigation). In addition, the Government provided a number of other evidentiary materials, such as audio and video tapes and grand jury information. The discovery was produced to Moussaoui's attorneys pursuant to protective orders covering "general discovery materials," "particularly sensitive discovery materials," "Sensitive Security Information" concerning civil aviation security (SSI), and classified information.[2]

Following the September 11 attacks, the Civil Plaintiffs filed three civil tort suits in the United States District Court for the Southern District of New York against both private airlines, airports, and security services, *see In re September 11 Litig.*, 21 MC 97, and *In re September 11 Property Damage and Business Loss Litig.*, 21 MC 101, and alleged terrorists and sponsors of terrorism, *Burnett v. Al Bakara Inv. & Dev. Corp.*, 03 Civ. 9849. Discovery in those cases has been complicated and contentious. It remains ongoing in the Southern District of New York.

On March 31, 2006, the Civil Plaintiffs filed in the Eastern District of Virginia a "Motion to Intervene for the Limited Purpose of Being Heard in Connection With Access to Certain Portions of the Record"

---

[2]The Government contends that much of this material would be protected from discovery in the civil context under various Government privileges.

at the conclusion of Moussaoui's criminal trial. (J.A. at 240.) Although the motion reflected only a desire to be heard in connection with access, the motion was quickly followed by a "Motion for Access to Certain Portions of the Record," (J.A. at 245), which went far beyond the record and contended that lawyers representing Moussaoui "should not be given a greater level of access to documentary evidence relating to those attacks than the attorneys representing victims, and family members of victims, who were brutally murdered on that day." (J.A. at 249.) The substance of the motion was a request for access to "all of the [G]overnment's information they turned over to the defense counsel in the . . . various discovery procedures ongoing over time." (J.A. at 261.) The Civil Plaintiffs cited the Crime Victims Rights Act (CVRA), 18 U.S.C.A. § 3771 (West Supp. 2006),[3] and Title IV of the Air Transportation Safety and System Stabilization Act (ATSSSA), Pub. L. No. 107-42, 115 Stat. 230, 237 (2001),[4] as

---

[3]The CVRA confers the following rights:

    (1)   The right to be reasonably protected from the accused.

    (2)   The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

    (3)   The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

    (4)   The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

    (5)   The reasonable right to confer with the attorney for the Government in the case.

    (6)   The right to full and timely restitution as provided in law.

    (7)   The right to proceedings free from unreasonable delay.

    (8)   The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C.A. § 3771(a) (West Supp. 2006).

[4]Aside from establishing the September 11th Victim Compensation Fund, ATSSSA placed limitations on air carrier liability and created an

authority for their request. The Government, on the other hand, argued that access to such information could be granted only through the course of civil discovery in the Southern District of New York.

At an April 7, 2006 hearing, the district court[5] initially commented that the relief requested was "a long shot." (J.A. at 255.) Over the course of the hearing, however, the district court became persuaded that the CVRA and ATSSSA evidenced Congress's unique interest in providing the Civil Plaintiffs with access to the discovery. (J.A. at 274 ("This situation is unique not just because there's a general victims statute but because Congress did pass a specific statute for the victims of September 11. That puts this in a somewhat unique posture, and I'm not so sure that the government is actually acting in the full spirit of what Congress intended there.").) The district court also expressed its opinion that it had "always been troubled by the degree to which our government keeps things secret from the American people." (J.A. at 273.) Furthermore, it noted that "the trial judge in [the Southern District of] New York is frustrated" and that the Eastern District of Virginia was not an "illogical" place to request the discovery. (J.A. at 281.) After the hearing, the district court granted the motion to intervene and ordered, inter alia, that the Civil Plaintiffs be provided access to "non-classified and non-SSI evidence." (J.A. at 290.)

On April 14, 2006, the Civil Plaintiffs submitted a broad discovery request, including classified and SSI materials and such things as every document from the PENTTBOM investigation produced to Moussaoui, every document collected by the 9/11 Commission that

exclusive remedy for damages arising out of the hijacking and crashing of the planes. Moreover, ATSSSA states that the "District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001." Air Transportation Safety and System Stabilization Act (ATSSSA), Pub. L. No. 107-42, § 408(3), 115 Stat. 230, 237 (2001).

[5]When referring solely to the "district court," we are speaking of the district court for the Eastern District of Virginia — the same court that presided over Moussaoui's criminal prosecution and entered the orders from which the Government appeals. When addressing the district court for the Southern District of New York, we will do so explicitly.

was produced to Moussaoui, and electronically searchable copies of all relevant FBI interviews. Although the district court's order exempted classified materials and SSI, the Civil Plaintiffs' requests were not so limited. Shortly thereafter, the defendants in the civil actions requested access to any materials being provided to the Civil Plaintiffs pursuant to the district court's order.

On April 21, 2006, the Government filed a motion for reconsideration, arguing that there was no legal basis for the district court's order. On May 19, 2006, the district court held a hearing and noted that it was "disappointed" by the breadth of the discovery requests. (J.A. at 320.) Nonetheless, the court stated from the outset that it was going to "be a very short hearing, because [it was] not reconsidering [the] order." (J.A. at 320.) Instead, the district court noted that "whether a particular discovery request is relevant or appropriate to the litigation to which it is connected is far more properly left to the judge who is responsible for the overall case, and Judge Hellerstein [the district court judge presiding over the civil action in the Southern District of New York] has been working diligently with the parties." (J.A. at 321.) Although the district court again failed to cite any direct law or rule in support of its initial order, it continued to maintain that the CVRA and ATSSSA "totally change the [legal] landscape." (J.A. at 324.)

The district court then entered a second order, stating that "the relevance of any particular discovery request made by the intervenors to the government pursuant to this Order must be determined by the district judge presiding over the civil litigation [in the Southern District of New York] out of which the discovery request arises." (J.A. at 333.) The order also purported to grant the Southern District of New York the authority to alter the Eastern District of Virginia court's "protective orders to allow for disclosure to additional qualified attorneys." (J.A. at 333.) On June 15, 2006, the Government filed a notice of appeal.

## II.

As an initial matter, we must satisfy ourselves that we have jurisdiction to hear the Government's appeal. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that

jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and alteration omitted)). The Government contends that the district court's order allowing the Civil Plaintiffs to intervene for the purposes of obtaining discovery is immediately appealable under the collateral order exception to 28 U.S.C.A. § 1291 (West 2006), and, alternatively, that a writ of mandamus would be appropriate in this instance. *See* 28 U.S.C.A. § 1651 (West 2006) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"). Because none of the traditional concerns that often lurk throughout criminal appeals by the Government are present, and the Government's appeal is completely separate from and collateral to its underlying prosecution against Moussaoui, we agree that this case represents one of the exceedingly rare instances in which the collateral order doctrine should apply in the criminal context.

### A.

The Government's right to appeal in criminal cases has historically been severely limited. In fact, "[p]rior to the Criminal Appeals Act of 1907, the Government had no right to appeal in criminal cases outside of the District of Columbia." *United States v. Vuitch*, 402 U.S. 62, 83 (1971) (Harlan, J., dissenting). "What disadvantage there be springs from the historic policy, over and above the constitutional protection against double jeopardy, that denies the Government the right of appeal in criminal cases save as expressly authorized by statute." *DiBella v. United States*, 369 U.S. 121, 130 (1962). The Government's general statutory right to appeal in criminal cases is now codified in 18 U.S.C.A. § 3731 (West Supp. 2006).[6] Here, the

---

[6]The full text of the statute provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Government freely concedes that jurisdiction is lacking under § 3731 and that no other statute exists that grants the Government the right to appeal a district court's decision to allow a third-party to intervene in a criminal case for the purposes of discovery. Instead, it contends that jurisdiction is proper under § 1291's collateral order doctrine. Section 1291 provides, in relevant part, that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States." 28 U.S.C.A. § 1291 (emphasis added). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Under the plain language of § 1291, then, we would not have jurisdiction to review the district court's order in this instance because it did not constitute a "final decision," as it was unconnected to the merits of the Government's criminal prosecution of Moussaoui and had no role in terminating the litigation. In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), the Supreme Court explained that the final deci-

---

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

The provisions of this section shall be liberally construed to effectuate its purposes.

18 U.S.C.A. § 3731 (West Supp. 2006).

sion rule acts to forbid appellate intrusion into matters that "remain[ ] open, unfinished or inconclusive" and to prevent piecemeal, harassing appeals of decisions that "are but steps towards final judgment." *Id.* at 546. In an attempt to align the text of the statute with those purposes, the Court has grafted an exception — known as the collateral order doctrine — onto § 1291. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (characterizing the doctrine as a "narrow exception"). *But see id.* at 867 ("The collateral order doctrine is best understood not as an exception to the final decision rule . . . but as a practical construction of it." (internal quotation marks omitted)).

The collateral order doctrine entitles a party to immediately appeal "from a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final" within the meaning of § 1291. *Id.* at 867 (internal quotation marks and citation omitted). Such decisions are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. The Supreme Court has repeatedly and carefully noted, however, that the doctrine is a "narrow" one and the requirements for its application are "stringent." *Digital Equip.*, 511 U.S. at 868 (explaining that the doctrine should "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of a district court error at any stage of the litigation may be ventilated" (internal citation omitted)). To come within the parameters of the collateral order doctrine, the order from which the appeal is taken must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from final judgment." *Will v. Hallock*, 126 S. Ct. 952, 957 (2006) (internal quotation marks omitted).

This case, however, does not present us with a garden variety collateral order question. An extra wrinkle is added because the Government is seeking to appeal an order that was issued in the context of its criminal case against Moussaoui and, as previously discussed, the Government's right to appeal in criminal cases is severely limited. Nevertheless, the Supreme Court has noted that in certain rare cir-

cumstances, the Government may be able to invoke the collateral order doctrine in criminal cases:

> It is true that certain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291 . . . without regard to the limitations of 18 U.S.C. § 3731, . . . just as in civil litigation orders of equivalent distinctness are appealable on the same authority without regard to the limitations of 28 U.S.C. § 1292 . . . .

*Carroll v. United States*, 354 U.S. 394, 403 (1957).

Nevertheless, several special concerns exist when applying the collateral order doctrine in the criminal context that are not present in the civil context. *See United States v. McVeigh*, 106 F.3d 325, 331 (10th Cir. 1997) ("[W]hen the government seeks review in a criminal case, concerns unaddressed by *Cohen* come into play."). For example, the protection against double jeopardy looms over many potential appeals by the Government in a criminal case. *See United States v. Wilson*, 420 U.S. 332, 344 (1975) (explaining that the Constitution would not allow the Government to appeal an order favoring the defendant if success on the appeal would subject the defendant to a second trial). Certain prudential concerns are put in issue as well, such as the defendant's and public's interests in a speedy trial, *see Carroll*, 354 U.S. at 415 ("Delays in the prosecution of criminal cases are numerous and lengthy enough without sanctioning appeals that are not plainly authorized by statute."), and the dangers of prosecutorial harassment, *see Arizona v. Manypenny*, 451 U.S. 232, 246 (1981) ("The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign.").

In short, we recognize that the collateral order doctrine is theoretically available to the Government when seeking to appeal adverse orders in a criminal case. Nevertheless, we reiterate the Supreme Court's warning that the instances in which such orders will be appealable pursuant to the collateral order doctrine "without regard to

the limitations of 18 U.S.C. § 3731 . . . . are very few." *Carroll*, 354 U.S. at 403.

## B.

The circumstances of this appeal are procedurally unusual even aside from the rarity of a Government appeal in a criminal case. The collateral order doctrine is used almost exclusively as a means of resolving a disputed issue between *adverse* parties, where the party seeking to appeal the collateral order would be forced to forfeit an important right if it could not appeal until after entry of final judgment. So, for example, the Supreme Court has invoked the collateral order doctrine to allow immediate appeals of orders rejecting claims to absolute immunity, *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982), qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), and Eleventh Amendment immunity, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). Likewise, the Court has allowed criminal defendants to immediately appeal orders rejecting a claim that trial would violate a defendant's double jeopardy rights, *Abney v. United States*, 431 U.S. 651, 662 (1977), and requiring a defendant to undergo medication against his will, *Sell v. United States*, 539 U.S. 166, 177 (2003).

Here, however, we are not dealing with a dispute between adverse parties in the underlying criminal prosecution, i.e., the Government and Moussaoui; rather, the appeal concerns an order in favor of the intervening Civil Plaintiffs against the Government. In fact, the Government is not even a defendant in the civil action in the Southern District of New York.[7] Moreover, we are not presented with an appeal that is interlocutory in nature. The Government did not file this appeal until after final judgment had been entered against Moussaoui, and his criminal appeal is currently pending in this court. *See United States v. Moussaoui*, No. 06-4494 (notice of appeal filed May 12, 2006). Nevertheless, because these important observations do not change the fact that the Government is attempting to appeal an adverse order from a criminal case (even though the order is not related to the crimi-

---

[7]In the airline suit, the Government intervened on behalf of the Transportation Security Administration (TSA) for the purpose of controlling disclosure of SSI in discovery.

nal case), the appeal must satisfy the *Cohen* test for jurisdiction to be proper under § 1291. *See Carroll*, 354 F.3d at 403 (explaining that the collateral order doctrine of *Cohen* may be applied to Government appeals in criminal cases when the order being appealed "possess[es] sufficient independence from the main course of the prosecution to warrant treatment as [a] plenary order[ ]").

The Civil Plaintiffs do not dispute that the district court's order satisfies the second and third conditions of the collateral order doctrine in that it "resolve[d] an important issue completely separate from the merits of the action" that is "effectively unreviewable on appeal from final judgment." *Will*, 126 S. Ct. at 957 (internal quotation marks omitted). We have little trouble concluding that we must resolve an important issue: whether a district court sitting in a criminal case has the power to compel the Government to disclose non-public documents to crime victims involved in a civil action in a different jurisdiction. The issue also is without question completely separate from the merits of the Government's criminal prosecution of Moussaoui. Moreover, like most orders against the Government in the criminal context, it is altogether unreviewable on appeal from final judgment in the criminal case.

The Civil Plaintiffs, however, contend that the district court's order does not satisfy the collateral order doctrine's first condition because the order failed to "conclusively determine the disputed question." *Id.* We disagree.

The Civil Plaintiffs suggest that nothing can turn the district court's order "into a final appealable judgment." (Appellee's Br. at 20.) We need not quibble with this assertion, however, because the collateral order doctrine is an exception to the final judgment rule. *See Sell*, 539 U.S. at 176 ("Nonetheless, there are exceptions to [the final judgment] rule."). Thus, the fact that the district court's order is not technically a final *judgment* is irrelevant to our discussion because the order can nonetheless be viewed as a final *decision* under the collateral order doctrine.

The Civil Plaintiffs further contend that the order is "inherently tentative" because it is not "the final word on the subject addressed." *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 278

(1988) (internal quotation marks omitted). In *Gulfstream Aerospace*, a seller filed a breach of contract claim against a buyer in state court. *Id.* at 273. The buyer then filed a diversity action against the seller in federal court, alleging breach of the same contract at issue in the state court action. *Id.* The seller asked the federal district court to abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), but the district court declined to stay or dismiss the case, and the seller attempted to appeal pursuant to, inter alia, the collateral order doctrine. *Gulfstream Aerospace*, 485 U.S. at 275. The Supreme Court held that the district court's decision was not immediately appealable because an order denying a *Colorado River* abstention motion is "inherently tentative . . . because it is not made with the expectation that it will be the final word on the subject addressed." *Id.* at 278 (internal quotation marks omitted).

The Civil Plaintiffs contend that, like a decision rejecting a *Colorado River* stay or dismissal, the district court's order here was inherently tentative because it was made with the expectation that the Government could challenge specific discovery requests made pursuant to the order in the Southern District of New York. That contention, however, belies the nature of the Government's argument and the district court's own interpretation of its order.

The Government argues on appeal that the district court was without the power to issue its order. In other words, the Government is contending that the district court had no jurisdiction or authority to allow the Civil Plaintiffs to intervene to require the Government to provide them with access to non-public discovery materials. Its argument is not so much based on the scope of the district court's decision as it is on the district court's lack of power to enter the order in the first place.

The district court, moreover, did not view the order as somehow tentative, and a district court's interpretation of its own order is for obvious reasons afforded great weight. *See Anderson v. Stephens*, 875 F.2d 76, 80 n.8 (4th Cir. 1989) (noting the "inherent deference due a district court when it construes its own order"). The district court explained its view that the Government was free to "appeal this order," (J.A. at 325), that the court was "not reconsidering [its] order," and that the order was "remaining in place," (J.A. at 320.) Although

the district court noted that the Government would be free to assert various privileges and other legitimate bases for not turning over specific documents in the Southern District of New York, the district court's order obligated the Government to turn over any document relevant to the civil litigation so long as the Civil Plaintiffs' request was "appropriate." (J.A. at 324.) Thus, it simply cannot be said that the district court's order was made with anything but an expectation that it would be "the final word on the subject." *Gulfstream Aerospace*, 485 U.S. at 278. In fact, the court itself recognized that it was "not going to get further involved" because it had "had [its] say" in the matter. (J.A. at 325); *see also* (J.A. at 331 ("That's the last [the court is] going to hear on this.").)

This appeal is also meaningfully different from the Government's earlier attempted appeal in *United States v. Moussaoui*, 333 F.3d 509 (4th Cir. 2003). In the order at issue in that appeal, the district court had granted in part Moussaoui's motion for access to an enemy combatant witness. *Id.* at 513. The Government appealed, citing, inter alia, the collateral order doctrine as jurisdictional authority. We determined that we lacked jurisdiction over the Government's appeal because the district court's order would "not become final unless and until the Government refuse[d] to comply and the district court impose[d] a sanction." *Id.* at 515. Our holding was rooted in long-standing Supreme Court precedent "that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal." *United States v. Ryan*, 402 U.S. 530, 533 (1971).

Unlike the circumstances in that situation, however, this appeal does not implicate "the necessity for expedition in the administration of the criminal law." *Id.* The only thing "criminal" about the district court's order is the forum in which the order was issued; in all other respects, the order is civil in nature. *See* (J.A. at 324 (explaining to the Government that it must treat the order just as it would a discovery order "in any other civil case").) Moreover, interlocutory review of the Government's previous appeal would have caused a delay in Moussaoui's criminal trial. Such concerns are not present here

because the order is not interlocutory and accepting jurisdiction over the appeal in no way prolongs the Government's prosecution of Moussaoui, who has already been sentenced and has his direct criminal appeal pending in this court.

Furthermore, the district court has washed its hands of this case, and it is therefore doubtful that the Government would ever have the opportunity to be sanctioned by the district court. Presumably, if the Government failed to comply with the district court's order, the Civil Plaintiffs could then attempt to return to the district court and ask that the Government be sanctioned. Based on the district court's instructions, however, it would not entertain the Civil Plaintiffs' request; instead, it would simply send the Civil Plaintiffs to the Southern District of New York to seek sanctions there. If the Southern District of New York then entered sanctions against the Government, it would not be able to appeal that order to this court. *See Preston Corp. v. Raese*, 335 F.2d 827, 828 (4th Cir. 1964) (explaining that we lack the general power to entertain an appeal "from an order entered by a District Court not within our territorial jurisdiction"). Thus, the Government would have to appeal any sanction order to the Second Circuit, and that Circuit would be forced to interpret an order from the Eastern District of Virginia, without any power to vacate that order. *See Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 177 (2d Cir. 2001) (noting "that a court of appeals normally has no jurisdiction to review the decision of a district court in another circuit"). The end result likely would be "a vicious circle of litigation" that would leave the Government without any means to review the district court's authority to enter the order. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (explaining the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," including when the case is transferred to a coordinate court in another federal jurisdiction (internal quotation marks omitted)).

Accordingly, we hold that the Government's appeal meets the basic requirements of the collateral order doctrine as articulated in the Supreme Court's *Cohen* line of cases. The district court's order was not "tentative, informal or incomplete." *Cohen*, 337 U.S. at 546. The district court's order "did not make any step toward final disposition

of the merits of the case and will not be merged in final judgment."
*Id.* It is also "not of such an interlocutory nature as to affect, or be
affected by, decision of the merits of this case." *Id.* The order, rather,
"possess[es] sufficient independence from the main course of the
prosecution to warrant treatment as [a] plenary order[ ]." *Carroll*, 354
U.S. at 403. We must therefore reject the central premise of the Civil
Plaintiff's argument, which is that the Government is "powerless to
avert the mischief of the order but must accept its incidence and seek
a remedy at some other time and in some other way." *Perlman v.
United States*, 247 U.S. 7, 13 (1918).[8]

C.

Although we conclude that the Government's appeal fits nicely
within the collateral order doctrine, we also must satisfy ourselves
that none of the traditional concerns that come into play when the
Government seeks to appeal in a criminal case are implicated. We
have little trouble concluding that they are not implicated in this
instance.

Because the order and our review has no impact on — and is, in
fact, completely disconnected from — the Government's criminal
prosecution against Moussaoui, none of the constitutional or pruden-
tial concerns cautioning against Government appeals in criminal cases
come into play. Instead, this represents one of the rare instances in
which "the determination of the defendant['s] guilt has been made,
sentence has been imposed, the attempted appeal is not interlocutory
in any sense, and no prospect of piecemeal litigation endures." *United
States v. Horn*, 29 F.3d 754, 768-69 (1st Cir. 1994).

In *Horn* — after the defendants were convicted and sentenced —
the district court assessed attorney fees and costs against the Govern-
ment because of prosecutorial misconduct. The First Circuit deter-
mined that it had jurisdiction under the collateral order doctrine to

---

[8]"[U]nder the . . . *Perlman* doctrine, a discovery order directed at a dis-
interested third party is treated as an immediately appealable final order
because the third party presumably lacks a sufficient stake in the pro-
ceeding to risk contempt by refusing compliance." *Church of Scientology
v. United States*, 506 U.S. 9, 18 n.11 (1992) (internal citation omitted).

review the Government's appeal because the "case involve[d] a sufficiently special set of circumstances." *Id.* at 768; *see also id.* ("[T]he particular circumstances at hand, especially the procedural posture in which this appeal arises and the nature of the relief sought, are conducive to allowing the appeal to go forward."). The court further noted that none of the speedy trial and double jeopardy concerns that are typically implicated in Government appeals in criminal cases were at issue. *Id.* at 768-69. The court was careful to emphasize, however, that:

> Rather than importing the collateral order doctrine lock, stock, and barrel into our criminal jurisprudence, we hold only that when, as now, the conditions of the collateral order doctrine are satisfied, and the prudential concerns that traditionally militate against allowing the government to appeal in a criminal case favor, or are at least neutral in respect to, the availability of a government appeal, then section 1291 affords a vehicle through which the government may seek appellate review in a criminal case.

*Id.* at 769 (footnote omitted).

Like the court in *Horn*, we conclude that jurisdiction is proper under the collateral order exception to § 1291[9] because the Government's appeal concerns a matter completely "separable from, and collateral to," *Cohen*, 337 U.S. 546, the merits of the Government's criminal prosecution against Moussaoui, and none of the traditional concerns so often implicated by governmental appeals from criminal cases are at issue. Nevertheless, we do not accept jurisdiction lightly and hasten to add that the circumstances from which the Government may appeal in a criminal case pursuant to the collateral order doctrine are exceedingly rare. Although this case represents one of those rare

[9]Because we determine that jurisdiction is proper under § 1291, we need not decide whether a writ of mandamus (or more accurately, a writ of prohibition) would have been appropriate if jurisdiction was not proper under the statute. *See Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.").

instances, we will continue to treat with suspicion future attempts by the Government to invoke our jurisdiction in criminal cases pursuant to § 1291.

## III.

Finding jurisdiction proper, we now address the merits of the Government's appeal. This appeal presents a question of first impression. There appears to exist no other case in which a district court in a criminal case required the Government to provide non-public criminal discovery materials to victims for their use in civil litigation against third parties in a different jurisdiction.[10] The Government argues that the district court lacked the legal authority, or power, to allow the Civil Plaintiffs to intervene for the purpose of obtaining non-public discovery materials.[11] As such, this appeal presents a question of law

---

[10]We are addressing only those aspects of the district court's orders that force the Government to turn over non-public materials. Crime victims, just like members of the public, have a general, qualified "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted); *see also In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (order) ("A First Amendment right of access applies to a criminal trial, including documents submitted in the course of a trial."). Thus, the district court was correct in explaining to the Civil Plaintiffs that they did not need to intervene to gain access to materials admitted into evidence because they "st[ood] in the same position as any member of the public." (J.A. at 257.) Materials that are discovered, but not admitted at trial, are a different matter because such materials are not "a traditionally public source of information." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

[11]The Civil Plaintiffs argue that the Government has waived this issue by failing to argue it below. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("Generally, issues that were not raised in the district court will not be addressed on appeal."). The record, however, belies this contention. During the hearing on the initial motion, the Government explained to the district court its view that the Civil Plaintiffs were attempting to embroil the district court in an issue that it "doesn't really have jurisdiction to address." (J.A. at 263.) This was the first point made by the Government. The district court then expressed its view that the CVRA might give it the power to grant the Civil Plaintiff's

that we review de novo. *See In re Pruett*, 133 F.3d 275, 280 (4th Cir. 1997) (holding that the district court's entry of ex parte discovery orders created a question of law and explaining that it was not an issue of "mere abuse of discretion").

A.

Before the district court, the Civil Plaintiffs relied heavily on the CVRA as the authority for their request of access "to all of the government's information . . . turned over to [Moussaoui's] defense counsel in the . . . various discovery procedures ongoing over time." (J.A. at 261.) The district court, in granting the Civil Plaintiff's motion, agreed that the CVRA, acting alongside ATSSSA, placed their request in a "unique posture," (J.A. at 274), and that the two statutes bestowed upon the district court the authority to enter the orders.

On appeal, the Civil Plaintiffs have abandoned the argument that the CVRA and ATSSSA granted the district court the authority to act in this instance. This was wise strategy, as nothing in those two statutes supports the district court's exercise of power.

The CVRA was designed to protect victims and guarantee them some involvement in the criminal justice process. *See Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016 (9th Cir. 2006) ("The statute was enacted to make crime victims full participants in the criminal justice system."). The Act guarantees victims notice of any proceedings, the right to attend those proceedings, the right to confer with the prosecutor, and the right to be "reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or parole proceeding." 18 U.S.C.A. § 3771(a). The rights codified by the CVRA,

---

motion, after which, the Government stated its contention that nothing in "the Victims' Rights Act gives victims the right to information that's not used at the trial publicly." (J.A. at 264.) In other words, the Government argued that the CVRA did not serve as authorization for the district court to grant the Civil Plaintiff's motion. By arguing that the district court lacked jurisdiction over the matter, the Government sufficiently informed the district court of its position and preserved the more crystallized argument it makes on appeal.

however, are limited to the criminal justice process; the Act is therefore silent and unconcerned with victims' rights to file civil claims against their assailants. *Cf. In re Kenna*, 453 F.3d 1136, 1137 (9th Cir. 2006) (holding that nothing in the CVRA's language or legislative history confers a right for crime victims to obtain disclosure of a pre-sentencing report).

ATSSSA, likewise, offers no support for the district court's orders. Although the statute created a specific federal cause of action for damages arising out of the September 11 hijackings and crashes, it provided the Southern District of New York — not the Eastern District of Virginia — with exclusive jurisdiction over such actions. Congress, then, in providing exclusive jurisdiction to the Southern District of New York, surely did not intend for discovery orders to be issued by the Eastern District of Virginia. Moreover, the statute did not purport to somehow alter or favorably amend the normal discovery and civil procedures that would be used in any other, garden-variety federal civil action.[12] In short, ATSSSA and the CVRA — standing alone or together — offer no support for the district court's orders.

B.

Having decided not to rely on the CVRA and ATSSSA, the Civil Plaintiffs instead contend that the procedure for disclosure of grand jury minutes to private plaintiffs acts as a precedent for the district court's order. *See, e.g.*, *Schweiker v. Hogan*, 457 U.S. 569, 585 n.24 (1982) ("The statutory argument raised by the appellees, although not presented in the District Court, may be decided on the basis of the record developed in that court."); *Nivens v. Gilchrist*, 444 F.3d 237, 248 (4th Cir. 2006) (permitting an appellee to defend a district court's

---

[12]Contrary to the district court's views that Congress passed special legislation benefitting victims who opted out of the September 11 fund, Section 408 of ATSSSA in fact limited the legal rights of such victims. The opt-out provisions limited air carrier liability to "the limits of the liability coverage maintained by the air carrier." ATSSSA, § 408(a), 115 Stat. at 240. The statute also precluded victims for suing in state courts and any federal court aside from the Southern District of New York, while providing that the substantive law in any suit will be defined by the substantive law of the state where the crash occurred.

judgment "under different reasoning" than that urged by the district court). We disagree.

Federal Rule of Criminal Procedure 6(e) provides that the traditional rule of grand jury secrecy may be placed aside under certain circumstances to allow for disclosure. Specifically, Rule 6(e)(3)(E)(i) states that a district court "may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . preliminary to or in connection with a judicial proceeding." The Supreme Court has explained that a party seeking disclosure of grand jury materials must make a showing of a "particularized need" by demonstrating that (1) the materials are needed to avoid an injustice in another proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is structured to cover only needed materials. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).

Rule 6, of course, deals solely with the grand jury, and nothing in its language extends its reach to general discovery. Beyond that, the Civil Plaintiffs freely admit that the district court did not purport to rely on Rule 6 in issuing its orders. Rather, the Civil Plaintiffs urge that the district court was within its discretion to grant them access to non-public discovery materials so long as it followed the general test for determining whether disclosure is proper under Rule 6. The circumstances calling for grand jury disclosures, however, are inapposite to the case at hand.

In *Douglas Oil*, the Supreme Court explained the difficulty faced by civil litigants who need access to grand jury minutes from a different jurisdiction. Although discovery is controlled by the court with jurisdiction over the civil action, "those who seek grand jury transcripts have little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the transcripts." *Id.* at 225. That concern is not present in this case. We are not dealing with evidentiary materials that are in the exclusive possession of the Eastern District of Virginia; rather, we are concerned with materials that the Government possesses, and that may be obtained by the Civil Plaintiffs in the Southern District of New York through the normal course of third-party civil discovery.

## C.

The thrust of the Civil Plaintiffs' argument, then, is best recast as an argument that the district court had the inherent authority to do what it did, and that the limits of that inherent authority should be defined by the same limits placed on district courts by Rule 6(e) and *Douglas Oil*. This theory suggests that if we were to find that the district court had the inherent, legal authority to grant the discovery request, we would then use Rule 6(e) and the *Douglas Oil* factors as guideposts to determine whether the district court abused its discretion in this instance. We hold, however, that this abuse of discretion analysis is unnecessary because the district court's inherent authority does not extend so far.

It has long been recognized that federal courts possess certain implied or inherent powers that "are necessary to the exercise of all others." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812); *see Ex Parte Robinson*, 86 U.S. 503, 510 (1873) ("The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of [certain inherent] power."). Inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). But "[t]he extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of Government, without benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen v. United States*, 517 U.S. 820, 823 (1996). "Principles of deference counsel restraint in resorting to inherent power, and require its use to be a reasonable response to the problems and needs that provoke it." *Id.* at 823-24.

In accordance with these principles, the Supreme Court has, for example, held that federal courts possess the inherent authority to sanction a party and lawyer appearing before the court, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), to dismiss a lawsuit sua sponte for failure to prosecute and on grounds of forum non conveniens, *see Link*, 370 U.S. at 630-31 and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), to consolidate actions arising out of the same controversy, *see Bowen v. Chase*, 94 U.S. 812, 824 (1876), and to

vacate a judgment for fraud on the court, *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944).[13] These cases stand for the proposition that a court has the inherent authority to control various aspects of the cases *before that court* so that they can "protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen*, 517 U.S. at 823.

These cases, however, do not go so far as to suggest that courts have an inherent authority to issue orders that facilitate the judicial process taking place in another case in another jurisdiction. Moreover, it simply cannot be said that the district court's orders were necessary for the district court's "orderly and expeditious disposition" of the Government's criminal prosecution against Moussaoui. *Id.* Even from the perspective of the civil suits in New York, the district court's orders were not necessary because Rule 26 of the Federal Rules of Civil Procedure provides for liberal discovery. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.").

Aside from the lack of necessity for the district court's orders, we note that we also are reluctant to sanction inherent powers that are novel in application. We are certainly "unaware of any 'long unquestioned' power of federal district courts," *Carlisle v. United States*, 517 U.S. 416, 426 (1996), to order the Government to disclose non-public materials given to the defense in a criminal trial to third-party civil plaintiffs involved in litigation in another jurisdiction. Because the district court's orders were unprecedented and entirely unnecessary, we hold that they were beyond the inherent powers of the court.

---

[13]In the criminal realm, the Supreme Court has recognized courts' authority to formulate certain procedural rules, "in the exercise of supervisory powers . . . to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and . . . as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983) (internal citations omittted).

### D.

As a final matter, we note that there are sound policy reasons for denying the district court the general power to let victims intervene in the criminal process for the purpose of obtaining discovery from the Government to be used in civil litigation. Those reasons include efficiency, competency, fairness, and slippery slope concerns.

First, the Civil Plaintiffs' approach would burden district courts presiding over criminal cases with time-consuming civil discovery requests. Moreover, the criminal court will be forced to educate itself about the civil litigation to determine whether the discovery request should be granted, and the civil court would ultimately be forced to interpret the criminal court's order and determine where it fits within the civil court's discovery plan.

Second, and aside from the efficiency concerns, there is a real question over whether a criminal court is competent to review the necessity for a discovery order with respect to civil litigation in another jurisdiction. For example, in the grand jury minutes context, the Supreme Court has noted that "the judges of the court having custody of the grand jury transcripts will have no firsthand knowledge of the litigation in which the transcripts allegedly are needed, and no practical means by which such knowledge can be obtained." *Douglas Oil*, 441 U.S. at 226.

Third, such a course might place unfair burdens on criminal defendants, the Government, and the public. For example, the Government often tries cases under an open file policy, "pursuant to which the government agree[s] to turn over essentially all of its documents to the defendants in return for the comfort of knowing that neither *Brady* nor *Giglio*[14] would be relevant throughout the protracted proceedings." *United States v. Derrick*, 163 F.3d 799, 812 (4th Cir. 1998). Under such a policy, the defendant is typically provided with all material that is legally required, as well as additional material that, although not legally required, might in the end be beneficial to the

---

[14]*Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), stand for the proposition that the Government's suppression of material evidence may justify a new trial.

defendant. If the Government was forced to disclose any materials given to defendants also to civil victims for use in litigation, it would have good reason to discontinue open door policies because of concerns over increased general access to sensitive materials. *See, e.g.*, *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (explaining that transforming discovery into a matter of public record would chill voluntary discovery and result in severe "consequences to the smooth functioning of the discovery process"). Moreover, by forcing the Government to more carefully scrutinize and screen materials, trials would be unnecessarily lengthened, thereby implicating the defendant's and public's speedy trial interests. *See Zedner v. United States*, 126 S. Ct. 1976, 1985 (2006) (explaining that the Speedy Trial Act, 18 U.S.C.A. § 3161 (West 2000 & Supp. 2006), was designed to protect both the public's and defendants' interests in speedy trials).

Fourth, and finally, neither the district court nor the Civil Plaintiffs have offered a reasonable limiting principle that might constrain future requests. Although the district court attempted to limit its decision by relying on the CVRA acting in conjunction with ATSSSA, those two statutes, as explained in part III.A., *supra*, offer no authority for the district court's orders. The CVRA applies to all crime victims, and while Congress passed a specific statute creating a cause of action for victims of the September 11 attacks, it also has enacted many other statutes creating specific causes of action. *See, e.g.*, 42 U.S.C.A. § 1983 (West 2003) (creating a cause of action for victims deprived of any rights, privileges, or immunities by an individual acting under color of state law). On the basis of the various statutes' texts (which are silent with respect to discovery), there is no logical way to distinguish between requests citing the CVRA and ATSSSA as authority and requests citing the CVRA and any other cause of action codified by Congress as authority. The district court's orders, then, if allowed to stand, would create a dangerous precedent that could lead to numerous victims intruding upon criminal trials for the purpose of obtaining discovery for their civil actions.

## IV.

We, like the district court, have great sympathy for the victims of September 11 and their families. They have endured the most abhorrent of acts. But regardless of how much respect and compassion this

court has, we must ensure that the federal courts in our jurisdiction — no matter how well intentioned — do not exceed their legal power. At base, there was no authority, inherent or otherwise, for the district court's orders in this instance. Because the district court lacked the necessary power, we are compelled to reverse and vacate its orders.

Congress has confined the Civil Plaintiffs' action to the Southern District of New York. If they need access to Moussaoui's grand jury transcripts, they are of course free to return to the Eastern District of Virginia and make a request under Rule 6(e) to transfer those transcripts to the Southern District of New York. Nevertheless, the general discovery process must be controlled by the very capable judges of the Southern District of New York, the only court with jurisdiction over the Civil Plaintiffs' causes of action. We are confident that the Government, which also sympathizes with the Civil Plaintiffs, will act with the utmost good faith in complying with the Southern District of New York's discovery orders, while also protecting our national security interests.

*REVERSED AND VACATED*